2003 OK 52

**Patti BARBER,**
Defendant/Appellant/Cross–Appellee,

v.

**Gary D. BARBER, Jr., Plaintiff/Appellee/Cross–Appellant,**

and

**Bonita Barber and Gary Barber, Sr., Interveners.**

No. 93,086.

Supreme Court of Oklahoma.

May 20, 2003.

Rehearing Denied Sept. 8, 2003.

Gerald J. Lovoi, Tulsa, OK, for Defendant/Appellant/Cross–Appellee Patti Barber.

M. Jean Holmes, Michael James King, Winters, King & Associates, Inc., Tulsa, OK, and Sherrie Thompson McAllister, Harris, McMahan & Peters, P.C., Tulsa, OK, for Gary D. Barber, Jr., Plaintiff/Appellee/Cross–Appellant.

Sean McKee, Tulsa, OK, for Bonita Barber and Gary Barber, Sr., Interveners.

WINCHESTER, J.

¶ 1 This matter concerns the right of a biological mother to dispute the presumption of paternity created by 10 O.S.2001, § 2(A)(1), pursuant to 10 O.S.2001, § 3, and the trial court's order awarding visitation with the biological mother's son to third parties, to-wit: his mother's former spouse and the former spouse's parents. Today we address whether the Court of Civil Appeals erred in its application of equitable estoppel to preclude the biological mother from disputing paternity, even though she complied with the provisions set forth in 10 O.S.2001, § 3 to contest paternity. We hold in the affirmative. The opinion of the Court of Civil Appeals is vacated. We further hold that the trial court erred when it awarded visitation rights with the biological mother's son to third parties, specifically, the biological mother's former spouse and the former spouse's parents. This case is remanded to the trial court for further proceedings consistent with today's pronouncement. The record before the Court establishes the following relevant facts.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The parties, Defendant/Appellant/Cross–Appellee Patti Barber, (hereinafter "Biological Mother") and Plaintiff/Appellee/Cross–Appellant Gary D. Barber, Jr., (hereinafter "Husband") were married in 1989 and a daughter was born of the marriage. Custody and visitation rights concerning the parties' daughter is not at issue herein. Custody and visitation rights concerning a son, born to Biological Mother after she was impregnated by another man, form the basis for the paternity issue presented herein. At the time Biological Mother became pregnant with this second child, she and Husband had separated. Subsequently, they reconciled. The son was born March 29, 1994. The record establishes that Biological Mother's Husband knew he might not be the father of Biological Mother's son, even during Biological Mother's pregnancy. Biological Mother allowed Husband's name to be placed on her son's birth certificate. The record establishes that the parties agreed they would rear Biological Mother's son together. Husband filed for divorce when Biological Mother's son was approximately nineteen months old. After awarding temporary custody of both children to Biological Mother, the trial court determined Biological Mother and Husband were unfit and placed the children with Husband's parents, who are the daughter's paternal grandparents but who are unrelated to Biological Mother's son. Biological Mother contested paternity under 10 O.S.2001, § 3 [1], within the two year period

---

1. 10 O.S.2001, § 3 provides:
 Persons entitled to dispute presumption—Time limit
 A. The presumption of paternity created pursuant to Section 2 of this title may be disputed only by the husband or wife, the putative father or their descendants. Paternity may be established pursuant to Section 70 of this title.
 B. If a child is born during the course of the marriage and is reared by the husband and

provided for doing so under the statute. The trial court ordered DNA testing, over Husband's objection that was based upon the presumption of paternity set forth in 10 O.S. 2001, § 2(A)(1)[2]. The record reflects that the DNA testing established Husband was not the Biological Mother's son's biological father. The trial court awarded custody of both children to Biological Mother, and set visitation rights for Husband and Husband's parents with both children. The record reflects that Biological Mother objected to Husband's and Husband's parents' visitation rights with her son, throughout the trial court proceedings on the basis that Husband was not her son's biological father. She raises this visitation issue on appeal.

¶ 3 Husband asserts Biological Mother is estopped from challenging paternity or that he should be treated as her son's father under a theory of "equitable parenthood," or "equitable adoption" or in Biological Mother's son's best interest. Biological Mother contends that she should not be forced to allow her son to have a relationship with Husband and his parents, since Husband is not her son's biological father. She also contends her son's best interest is met by disallowing Husband access to him.

¶ 4 The Court of Civil Appeals, Division III, applied the principle of equitable estop-

pel to prevent Biological Mother's timely challenge to the marital presumption contained in 10 O.S.2001, § 2(A)(1). The court held that the trial court improperly allowed Biological Mother to challenge paternity. In a published opinion, it reversed the trial court's order and remanded with instructions to reconsider custody, visitation and child support issues concerning Biological Mother's son.

## STANDARD OF REVIEW

¶ 5 The issues before us arise from the court's ruling on matters of law, to-wit: whether Biological Mother was equitably estopped from contesting paternity, and whether Husband and Husband's parents were entitled to visitation rights with the son even though Husband is not the biological or adoptive father. We note that were the "best interests of the child" a consideration, then the issue would become a fact question, dictating a different standard of review. However, since both of these issues are matters of law, our review is *de novo*. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley v. Brown*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456, n. 30. Upon *de novo* review, we hold that

---

wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone.

2. 10 O.S.2001, § 2(A)(1) provides:

Presumption of paternity

A. Except as otherwise provided by Section 215 of Title 84 of the Oklahoma Statutes, a man is presumed to be the natural father of a child for all intents and purposes if:

1. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within ten (10) months after the termination of the marriage by death, annulment, declaration of invalidity, divorce or dissolution, or after a decree of separation is entered by a court. A child born before wedlock becomes legitimate by the subsequent marriage of his parents even if the marriage is, was or could be declared invalid. Any child born within the ten-month period specified in this subsection which is born during a subsequent marriage to another person shall be presumed to be the legitimate child of that subsequent marriage;

2. Before the child's birth, he and the child's natural mother have cohabitated and the child is born within ten (10) months after the termination of cohabitation. As used in this paragraph, the term cohabitation means the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law;

3. While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child for a period of at least two (2) years;

4. The United States Immigration and Naturalization Service made or accepted a determination that he was the father of the child at the time of the child's entry into the United States and he had the opportunity at the time of the child's entry into the United States to admit or deny the paternal relationship; or

5. Statistical probability of paternity is established at ninety-five percent (95%) or more by scientifically reliable genetic tests, including but not limited to blood tests.

B. The presumption of paternity created pursuant to this section may be disputed pursuant to Section 3 of this title.

the principle of equitable estoppel is not applicable to prevent a timely challenge to the marital presumption.

## CHALLENGES TO THE MARITAL PRESUMPTION

 ¶ 6 The statutory language of § 2(B) is clear that the marital presumption of paternity may be challenged under § 3 by Biological Mother within two years of her son's birth. The statute does not reference the common law principle of equitable estoppel in the context of an analysis regarding whether the presumption should be challenged. Indeed, the common law does not make provisions for paternity suits, and we decline to call upon an equitable tenet of the common law to carve an exception to the legislature's clear intent in this regard.[3] Challenges to the marital presumption under 10 O.S.2001, § 3 do not involve a tort and are not civil actions at law or suits in equity, but rather are special statutory proceedings for the purpose of challenging the marital presumption of paternity and for ascertaining the paternity of a child. " 'Special proceedings' is a term used to distinguish litigation that is not governed by the general regime of pleadings." *Ward Petroleum Corp. v. Stewart*, 2003 OK 11, ¶ 7, 64 P.3d 1113, 1115. They are distinguished from other civil actions by the manner of pleading, practice and procedure prescribed by the law. *Id.* Accordingly, these actions to challenge the marital presumption are statutory in nature, created by the legislature and embodied in 10 O.S.2001, § 3. The common law theory of promissory estoppel has no place in this kind of special proceeding.

¶ 7 The theory of promissory estoppel is grounded in the Restatement (Second) of Contracts § 90 and is incorporated into Oklahoma common law. *Russell v. Board of County Commissioners, Carter County*, 1997 OK 80, ¶ 27, 952 P.2d 492, 503. Section 90 of the Restatement (Second) of Contracts states in relevant part:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. * * * "

We articulated the elements necessary to establish promissory estoppel in *Russell v. Board of County Commissioners, Carter County*, 1997 OK 80, ¶ 27, 952 P.2d 492, 503, to-wit:

1. a clear and unambiguous promise;
2. foreseeability by the promisor that the promisee would rely upon it;
3. reasonable reliance upon the promise to the promisee's detriment;
4. hardship or unfairness can be avoided only by the promise's enforcement.

 ¶ 8 In the case at bar, Husband's theory of promissory estoppel seems to arise from his contention that he and Biological Mother, at some point prior to his request for divorce, agreed to rear Biological Mother's son "together." Even if we were at liberty to consider the application of promissory estoppel to the instant facts, which we are not, it is apparent that the four elements we set forth in *Russell, supra*, are not present herein. No factual disputes exist to open the door for a theory of promissory estoppel, were it possible to do so. The record reflects that Husband filed for divorce from Biological Mother, thus rendering it impossible for the parties to rear her son "together." Indeed, Husband commenced the very action that precluded Biological Mother from fulfilling her half of their "promise" to rear her son as though he were Husband's. It cannot be said that Husband relied on this joint

---

**3.** We reject Husband's suggestion that 10 O.S. 2001, § 70(B)(4) supports application of equitable estoppel in this matter. Section B sets out four ways to establish paternity. Section (B)(4) provides that paternity may be established "as otherwise provided by law." We reject the notion that principles of equitable estoppel may be injected under this blanket language to defeat a

successful challenge to Husband's paternity. Husband fails to cite any authority for this argument, and indeed no authority exists for such an interpretation. We also note that the Court of Civil Appeals did not rely upon such an argument when it applied the principles of equitable estoppel in this cause.

promise to his detriment. The record does not contain any reference to hardship or unfairness to Husband in allowing Biological Mother to contest the marital presumption, because he in fact is not the biological father of her son. Further, the record is undisputed that Biological Mother challenged paternity within the statutory two-year time period. The record further reflects it is undisputed that the DNA testing established Husband is not the biological father of Biological Mother's son. Accordingly, we determine Husband's argument that Biological Mother is equitably estopped from contesting paternity lacks merit.

## VISITATION ISSUES

¶ 9 Biological Mother contends that because Husband is not the biological father of son, he is not entitled to visitation rights, nor are Husband's parents. We agree. A parent's right to companionship, care, custody and management of her child is a basic fundamental right protected by the United States and Oklahoma Constitutions. *Leake v. Grissom*, 1980 OK 114, ¶ 8, 614 P.2d 1107, 1110. Visitation rights in the absence of a statute derive from the right to custody. "A parent is under no legal obligation to permit a child to visit its grandparents in the absence of a statute." *Id.* The longing of Husband herein, and Husband's parents, for the company of Biological Mother's son may not be translated into a legal right in the absence of a statute that dictates visitation or in the absence of a pre-existing legal adoption by Husband of Biological Mother's son. No legal authority exists to compel Biological Mother to permit visits by Husband and Husband's parents. Indeed, we held in *Leake, supra,* that even biological paternal grandparents did not have the right to visit their grandchildren who had been adopted by the biological mother's husband; *a fortiori*, in the instant case, in which neither Husband nor Husband's parents are biologically or legally (through adoption) related to Biological Mother's son. We note that grandparent visitation recently was addressed by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). At issue in *Troxel* was the constitutionality of Section 26.10.160(3) of the Revised Code of Washington, that allowed "any person" at "any time" to obtain visitation rights when such visitation was in the child's best interests. The Supreme Court invalidated the statute, holding it impermissibly interfered with "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2060. Hence, our observation hereinabove that visitation rights, in the absence of a statute, derive from the right to custody. In the case at bar, the trial court awarded custody of the son and the other child, a daughter, to Biological Mother. That decision of the trial court is not before us. Only the issue regarding the trial court's award of visitation privileges with the son, awarded to Husband and Husband's parents, is before us. We hold upon *de novo* review that this award of visitation privileges with Biological Mother's son is not supported by statute or by the court awarded custody to Biological Mother. Indeed, it impinges upon Biological Mother's fundamental right to make decisions concerning the care, custody, and control of her son.

¶ 10 Therefore, we hold that the trial court erred when it awarded visitation rights with Biological Mother's son to Husband and Husband's parents. We also hold that the Court of Appeals erred when it applied principles of equitable estoppel to Biological Mother's successful challenge to the marital presumption of Husband's paternity. We determine that all of Husband's arguments in the instant matter lack merit. This case is remanded to the trial court for further proceedings consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT.**

CONCUR—WATT, C.J., and HODGES, LAVENDER, KAUGER, and BOUDREAU, JJ.

CONCUR IN PART; DISSENT IN PART—OPALA, V.C.J., HARGRAVE and SUMMERS, JJ.