2004 OK CIV APP 20

**DEPARTMENT OF HUMAN SERVICES, Plaintiff/Appellant,**

v.

**Billy J. CHISUM, Defendant/Appellee.**

No. 97,479.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 23, 2004.

Jonathan C. Neff, David M. Messer, Brune & Neff, P.C., Tulsa, OK, for Plaintiff/Appellee.

John M. Sharp, Amy E. Wilson, Department of Human Services, Tulsa, OK, for Defendant/Appellant.

OPINION

ADAMS, Judge:

¶ 1 The Oklahoma Department of Human Services (DHS) appeals from an order granting Billy Jo Chisum's motion to vacate a support order that was based upon his execution of an affidavit of paternity. The trial judge concluded Chisum established a material mistake of fact under 10 O.S.Supp.1999 § 70. We reject DHS' arguments that § 70 may not be applied under the circumstances of this case and affirm the trial court's order.

¶ 2 The child, A, was born out of wedlock on June 7, 1999, and Chisum signed a voluntary acknowledgement of paternity that same day. Chisum stated under oath that he signed the acknowledgment based upon assertions by A's mother that he was the child's father, and the record contains no evidence to dispute this fact.

¶ 3 In February of 2000, Chisum agreed to the entry of an Administrative Order for Child Support which recited that he had executed an acknowledgment of paternity, determined he was A's father, and set the amount of child support. The administrative order was docketed in the District Court of Tulsa County on May 8, 2000.

¶ 4 Several months later, Chisum suspected he was not A's father and had private DNA testing performed.[1] The results excluded him as A's father. On April 16, 2001, Chisum filed his motion to vacate both the child support order and his prior acknowledgment of paternity, alleging material mis-

---

1. According to a trial court brief filed by Chisum, this suspicion was based on a more recent state-ment by A's mother that Chisum was not the father.

take of fact as a basis. The trial court entered an order for genetic testing of A and Chisum in June of 2001, and that test also excluded Chisum as A's father. The trial judge granted Chisum's motion, finding that the parties agreed Chisum was not A's father, and that he had established his acknowledgment was based on material mistake of fact. This appeal followed.

∎ ¶ 5 For reversal, DHS argues Chisum failed to state any grounds recognized in 12 O.S.2001 § 1031.1 for vacating what it says was a final order determining Chisum was A's father. Accordingly, DHS argues Chisum is bound by *res judicata.* However, where it applies, § 70(C)(1) specifically provides for a proceeding to establish that an acknowledgment was the result of a material mistake of fact *and* for the release of the "person signing the acknowledgment of paternity" from "any court-ordered or Department-ordered payments for the support and maintenance of the child" if the court determines the person is not the father of the child. The specific provisions of § 70 control over the more general provisions of 12 O.S. 2001 § 1031.1. *See Parks v. Stith,* 1951 OK 144, 232 P.2d 614, 204 Okl. 625. Chisum was not barred by *res judicata* from challenging the child support order and his acknowledgment under § 70.

¶ 6 DHS also argues that the provisions of § 70 in effect at the time Chisum signed the acknowledgment did not allow him to withdraw his acknowledgment on any ground after sixty days. We agree. The amendments to § 70 became effective three days after Chisum signed the acknowledgment. However, this does not end the inquiry. The time limits set forth in § 70 are essentially statutes of limitation. At the time the amendments to § 70 became effective, Chisum's right to challenge the acknowledgment under the pre-amendment statute was not time-barred, and the Legislature's decision to extend the time period beyond the sixty-day period for certain criteria will be given effect. *See Trinity Broadcasting Corporation v.*

*Leeco Oil Company,* 1984 OK 80, 692 P.2d 1364. The trial court did not err in applying § 70, as amended, to this case.

∎ ¶ 7 Even if § 70 applies, DHS argues Chisum did not establish a "material mistake of fact." Relying on the definition of "mistake of fact" contained in 15 O.S.2001 § 63, DHS argues Chisum's ignorance of the true facts concerning A's paternity was caused by his "neglect of legal duty" because he did not insist on genetic testing before signing the acknowledgment. However, DHS has cited no authority imposing a *legal* duty on a putative father to insist on genetic testing before assuming responsibility for a child born out of wedlock, and we decline to impose such a duty, at least where there is evidence that the mother has made positive assertions to the putative father concerning his paternity.[2] The trial court did not err in concluding Chisum had established a "material mistake of fact."

¶ 8 Finally, DHS argues that the trial court erred because it did not consider the "best interests" of the child in deciding whether Chisum could challenge his acknowledgment of paternity. In essence, DHS argues that Chisum should be treated as A's father, even though he is not his biological father, because equitable considerations require it.

¶ 9 To support this argument, DHS cites several opinions from courts in other states which imposed a child support obligation on a man not the biological father of a child. Most turn on principles such as "equitable parenthood," "psychological parenthood," or equitable estoppel. For example, in *Monmouth County Division of Social Services v. R.K.,* 334 N.J.Super. 177, 757 A.2d 319, 324 (2000), the court employed a balancing test. The putative father had signed an admission of paternity and consented to paying child support, but later arguably presented "clear and convincing evidence that there was a material mistake of fact relied upon at the time his paternity was adjudicated—that mistake being that he was the biological fa-

---

2. The DHS approach is likely to inject an element of hostility into the oftentimes already volatile emotional relationships arising out of the birth of a child out of wedlock. Not only is such

testing expensive, but the putative father's request of such tests may be perceived as an attack on the mother's veracity and an attempt to shirk responsibility for the child.

ther." Nevertheless, the court concluded he was the child's "psychological father" and should be "equitably estopped from denying his paternity because to do otherwise would not be in the best interests of [the child]."

¶ 10 We may not employ such a test. In *Barber v. Barber*, 2003 OK 52, 77 P.3d 576, the Court held equitable estoppel and similar equitable theories are not applicable in paternity proceedings to establish legal paternity in a man who is not the child's biological father.[3]

¶ 11 DHS has not demonstrated any error in the trial court's order, and the trial court's order is affirmed. Chisum's request for appellate attorney fees under 12 O.S.2001 § 941, based upon his contention that DHS' appeal lacked a reasonable basis, is denied.[4]

AFFIRMED.

JONES, J., and BUETTNER, V.C.J./P.J., concur.

---

**3.** Although the Court analyzed only "equitable estoppel" in depth, it noted that Mr. Barber, who was not the child's biological father, argued "he should be treated as [the child]'s father under a theory of 'equitable parenthood,' or 'equitable adoption' or in [the child]'s best interest," 2003 OK 52, ¶ 3, 77 P.3d 576, 578. We can only conclude that it rejected those other theories because the Court affirmed the trial court's decision rejecting Mr. Barber's claims of paternity, despite a trial court finding that it would be in the child's best interest for Mr. Barber to be treated as his father.

**4.** *Barber* was decided after the appellate briefing was completed in this appeal.