2005 OK CIV APP 58

**Proctor Andrew YOUNG,
Petitioner/Appellant,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF HUMAN SERVICES, and Shirell Bell, Respondents/Appellees.**

**No. 101,060.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Aug. 4, 2005.

Kenneth R. Farley, Idabel, OK, for Petitioner/Appellant.

Virginia DeCarlo Sanders, District Attorney, Charlene Louise Ginter, Assistant District Attorney, Idabel, OK, for Respondents/Appellees.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶ 1 Petitioner/Appellant Proctor Andrew Young appeals the District Court's decision in Young's administrative review proceeding which challenged an order entered by Respondent/Appellee State of Oklahoma, ex rel. Department of Human Services (DHS), establishing paternity and ordering child support. We find the administrative order is valid and free from prejudicial error and we affirm.

¶ 2 The paternity of three children born to Shirell Bell is at issue in this case: twin boys born June 24, 1998 and a girl born September 3, 2000. On June 25, 1998, Phillip Johnson signed affidavits acknowledging paternity of the twins. A DHS Administrative Order for Support Payments was filed October 29, 1998.[1] That order directed Johnson to pay monthly child support for the twins.

¶ 3 Johnson never paid child support and DHS filed an Application for Contempt Citation against Johnson March 13, 2001. Johnson agreed to appear June 6, 2001. On June 6, 2001, Bell signed a statement that Johnson was not the father of her twins. In that statement, Bell named Young as the father. A DHS administrative law judge (ALJ) filed July 30, 2001 an Order to Vacate which vacated the Administrative Order for Support Payments entered against Johnson. The stated basis for the Order to Vacate was that "genetic tests were performed and [Johnson] was excluded."

¶ 4 DHS then initiated administrative paternity proceedings against Young. Young filed a Motion to Dismiss those proceedings February 1, 2002. Young argued that the administrative order for support filed against Johnson was a final judgment which could no longer be vacated under 12 O.S.2001 § 1031 because the two year limitations period had expired. While the Motion to Dismiss was pending, DHS and Young litigated DHS's request for a third genetic test to be per-

1. The record contains a letter from Johnson dated October 5, 1998, asking for a paternity test to determine if he is the father of the twins. In the letter, Johnson declared he would not pay child support until a blood test confirmed paternity. On February 28, 2001, Johnson filed a similar letter in which he demanded a paternity test as to Bell's daughter. In the 2001 letter, Johnson alleged Bell had lied to him when she stated he was the father of the twins and he doubted her claim that he was the father of her daughter.

formed on Young and the children.[2] Following a hearing, the ALJ granted DHS's motion for additional testing and denied Young's Motion to Dismiss in an Order filed February 18, 2003. Young challenged the February 18, 2003 Order in his Petition in Error for Review of Administrative Order and Authorities filed March 14, 2003.[3] The District Court later dismissed that Petition in Error.[4]

¶ 5 Pursuant to the ALJ's order for additional genetic testing, Labcorp performed genetic testing on Young and the children August 25, 2003. Those test results showed a 99.99% probability that Young is the father of all three children. An administrative hearing was held October 15, 2003. At the conclusion of the hearing, the ALJ announced its finding that Young is the father of the children. The ALJ further directed Young to pay child support according to the child support guidelines.

¶ 6 Young filed a second Petition in Error for Review of Administrative Order and Authorities November 14, 2003. Young repeated his arguments that the administrative order of support filed against Johnson was a final order which could not be vacated, and that DHS's administrative proceeding against Young was an impermissible collateral attack on the final judgment regarding Johnson. Young also again argued that the authority for paternity testing does not mention a third test, and that although DHS had

stated its intent to pay for the third test, the ALJ was free to direct Young to pay part of the cost, which Young argued would be an unfair burden on him. And, despite the fact the two existing test results were conflicting, Young asserted a third result was cumulative. Young lastly asserted the ALJ erred in finding Young fathered the children. Young argued DHS failed to meet its burden of proving paternity.

¶ 7 The District Court entered its Order Affirming Administrative Order Establishing Paternity July 12, 2004. The District Court first addressed the February 18, 2003 interlocutory order denying Young's Motion to Dismiss the proceedings as to the twins. The court rejected Young's assertion that the paternity proceeding against him amounted to a collateral attack, made by DHS, on Johnson's acknowledgment of paternity and order for child support in Case No. CV–98–838. The court instead found that Young was collaterally attacking the Order to Vacate the support order entered against Johnson. The court concluded that because the paternity affidavit and order of support against Johnson had been vacated, there was no finding of paternity as to Johnson, and there would only be a paternity finding as to Johnson if the court granted the relief sought by Young, effectively reinstating a vacated paternity proceeding after the order to vacate and dismissal of Johnson had become final for lack of appeal.

---

2. The first test, performed by Gene Screen in November 2001, indicated Young was the father of the children. In March 2002, Young obtained testing by Bio–Synthesis which indicated Young was not the father. DHS then filed its Motion for New Genetic Test by Labcorp. DHS asserted that it had ended its contract with Gene Screen and that Gene Screen was no longer assisting DHS with responding to interrogatories. DHS further asked that all the children, Bell, and Young be directed to appear together for testing, because of the controversial nature of the case.

3. Young repeated his argument that the paternity affidavit and child support order entered against Johnson, in Case No. CV–98–838, were final and could not be vacated. Young argued that Johnson had been finally determined to be the father of the twins and that DHS's paternity action against Young was a collateral attack on the administrative decision that Johnson was the father of the twins. Young argued that DHS was a

party to Case No. CV–98–838 and was barred by issue and claim preclusion from challenging that judgment in Case No. CV–03–160, its proceeding against Young. Young also argued that no statute allowed the ALJ to order a third genetic test for paternity. Young asserted that each party had previously obtained genetic testing with conflicting results. Young argued that any further test results should be excluded as cumulative evidence.

4. The court found that the ALJ's February 18, 2003 order denying Young's motion to dismiss the paternity proceedings and order for additional genetic testing was an interlocutory order. The court explained that it had jurisdiction to review final agency orders only, pursuant to 56 O.S.2001 § 240.3(A)(1) and 75 O.S.2001 § 318(A)(a).

¶8 The District Court further found that neither *res judicata* or claim preclusion barred the proceedings against Young because the issue of his paternity was not litigated in the proceeding involving Johnson, and Young was not a party or privy to that proceeding. The court further found that the July 30, 2001 Order to Vacate (the paternity proceeding involving Johnson) was final because the time to appeal that order had expired. Accordingly, to succeed, Young would have to show the Order to Vacate was void. The court noted authority holding that a stranger to a prior proceeding, whose rights occurred prior to the judgment, may collaterally attack the judgment on the ground that it is fraudulent as to the stranger, citing *Dowell v. Dennis*, 2000 OK CIV APP 29, 998 P.2d 206. The court concluded that the issue in the Johnson proceeding was whether Johnson was the father of the children, not *who* was the father of the children. The court concluded nothing in Johnson's case addressed whether Young was the father, and that Young's rights accrued after the Order to Vacate. The court found therefore that Young's issue preclusion claim was also barred. The court indicated that even if Young had standing to challenge the Order to Vacate, Young could not show that the Order to Vacate was fraudulent as to Young or otherwise void.

¶9 The District Court next determined that the Order to Vacate was not void on the face of the judgment roll. The court noted that 56 O.S.2001 § 238.6B(B)(12)(a) provides that an acknowledgment of paternity is considered a legal finding of paternity, but that section expressly allows for a court challenge to a voluntary acknowledgment of paternity on the basis of fraud, duress, or material mistake of fact. The court noted evidence in the record that Johnson requested genetic testing in October 1998 and March 2001. The court determined these requests served as a *pro-se* litigant's motion to reopen, correct, modify, or vacate the September 21,

1998 child support order for purposes of 12 O.S.2001 § 1031.1(B). The court also recognized that the Administrative Procedures Act allows re-opening an administrative proceeding at any time on grounds of fraud or an order procured by perjured testimony or fictitious evidence, citing 75 O.S.2001 § 317(C). The District Court held that Johnson's initial request for genetic testing, made before the original Order of Support, was timely and that the failure of the ALJ to act upon that request did not deprive it of jurisdiction to later re-open the matter.

¶10 The District Court determined that once the ALJ re-opened the case to receive the genetic test results showing Johnson was not the father of the children, the ALJ was required, under 56 O.S.2001 § 238.6B(G) to dismiss the proceedings against Johnson. The court held that Young was unable to show that the order vacating the support order and dismissing the proceedings against Johnson was fraudulent or void in any way. The District Court therefore affirmed the ALJ's February 18, 2003 order overruling Young's motion to dismiss the proceedings against him. The trial court also found no abuse of discretion in the interlocutory order for a third genetic test because 10 O.S.2001 § 502 allows for genetic testing and provides that the number of experts performing such tests shall be determined by the court.

¶11 Lastly, the District Court addressed Young's argument that the ALJ erred in finding Young was the father of the children. The court recognized that in reviewing administrative orders, a District Court must affirm the administrative order if it is supported by substantial evidence and the order is free from error, citing *City of Hugo v. State ex rel. Public Employees Relations Board*, 1994 OK 134, 886 P.2d 485. The court noted Bell's testimony that she and Young engaged in sexual relations preceding both pregnancies, and Bell's testimony that Young was the father.[5] The court

---

5. Bell testified that she was in a relationship with Johnson from 1994 or 1995 until 2000. She testified that she and Young engaged in sexual relations "probably twice a week" during the time in which she conceived the twins and also during the time in which she conceived her

also noted the testimony and evidence regarding the genetic testing and the results showing Young was the father of the children. The court noted the undisputed evidence, from the expert at Labcorp (the DHS contracted lab) and the expert at Bio–Synthesis (the lab used by Young), that they did not test samples from the same man. Both experts testified that their testing samples matched identically for the children, but not the father, which led these experts to conclude the father samples came from two different men. The Bio–Synthesis expert also indicated he had only seen a dark photocopy of Young's driver's license, rather than a clear photograph of Young. This expert also noted Young's signature on the DNA sample collection sheet differed from the signature on the photocopied driver's license. The District Court concluded that substantial evidence supported the ALJ's finding that Young was the father of the children in this case.

 ¶ 12 Young now appeals the District Court's decision, pursuant to 75 O.S. 2001 § 323. Under the APA, the District Court and this court apply the same review standard for agency actions. *City of Tulsa v. State ex rel. Public Employees Relations Bd.*, 1998 OK 92, 967 P.2d 1214. We may set aside the ALJ's decision only if we determine one or more of the grounds listed in 75 O.S.2001 § 322 [6] are shown, and we may not

disturb the decision "unless our review leads us to a firm conviction (the agency) was mistaken." *Carpenters Local Union No. 329 v. State ex re. Dept. of Labor*, 2000 OK CIV APP 96, 11 P.3d 1257. Neither the District Court nor this court is entitled to substitute its judgment on factual questions for that of the ALJ as to the weight of the evidence. *City of Tulsa*, 967 P.2d at 1219. The administrative order should be affirmed if it is valid and free from error prejudicial to Young. *Id.*; 75 O.S.2001 § 322(3).

 ¶ 13 In this appeal, Young has repeated his claims made below. We first address Young's claim that the Order to Vacate the proceedings against Johnson was invalid because the time for vacating the paternity and support orders had passed when the Order to Vacate was entered. Young hopes to have the support and paternity orders relating to Johnson reinstated by vacating the Order to vacate. "The word vacate, as applied to a judgment or an order, means to rescind, to eliminate, to set it aside, or render the order void or a nullity." *Hays v. L.C. I., Inc.*, 1979 OK 176, 604 P.2d 861, 862. "To vacate something is to destroy it, to eliminate it, to render it a nullity." *Matter of Meekins*, 1976 OK CIV APP 32, 554 P.2d 872, 875. Once the Order to Vacate was entered, and the time to appeal that order had passed, the matters vacated are no longer in existence. At this point, there is no

---

daughter. Young testified he had sexual relations with Bell only one time, in May 1997.

**6.** Section 322 provides:

(1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent

evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.

(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

surviving paternity acknowledgment or support order entered as to Johnson and the proceedings against him have been dismissed.

■■■ ¶ 14 Young's claim that the Order to Vacate was void because it was entered after the two year time limit prescribed by 12 O.S.2001 § 1038 is without merit. Young argues that the statute of limitations for a petition to vacate based on fraud in obtaining the judgment is two years and that the face of the judgment roll therefore shows the Order to Vacate was void. The Oklahoma Supreme Court has recently held that the § 1038 provisions are statutes of limitations governing reopening paternity decisions based on fraud. *Hill v. Blevins*, 2005 OK 11, ¶ 10, 109 P.3d 332.[7] However, parties may waive the benefit of a statute of limitations. *In re 1973 John Deere 4030 Tractor*, 1991 OK 79, 816 P.2d 1126, 1128. Nothing in the record indicates the parties to the Johnson paternity proceeding asserted any statute of limitations bar to the order vacating the paternity affidavit and support order. We find nothing on the face of the judgment roll showing the Order to Vacate was void based on the time it was entered.

¶ 15 Additionally, while it is unclear whether Young was entitled to notice of those proceedings, Young has failed to raise that issue. In *Hill, supra,* the court recognized its earlier holding that a stranger to the judgment roll of an adoption proceeding may bring an action to vacate the adoption if he or she possesses an interest entitled to legal protection that is impaired by the decree, citing *Matter of C.J.S.*, 1995 OK 70, 903 P.2d 304, 306. In *Hill,* the court found that a man claiming to be the biological father had such an interest to allow him to file a petition to vacate another man's acknowledgment of paternity. 2005 OK 11, at ¶ 9, 109 P.3d 332. However, later in *Hill* the court explained that the man claiming to be the biological father was on notice of the existence of his child from the time of its birth (based on a positive pregnancy test result received while he was still with the mother). The court expressly stated "a trial judge or litigant is not required to give special notice to a non-party who is presumptively capable of asserting and protecting his own rights." *Id.* at ¶ 12. The court therefore affirmed the denial of the biological father's untimely fraud-based petition to vacate the paternity acknowledgment signed by another man where the biological father waited six years to file his petition to vacate. *Id.*

¶ 16 We need not reconcile these two statements to determine whether Young was entitled to notice of the proceedings involving Johnson because, as noted above, Young has not raised the issue of notice.[8] If Young had raised the issue, he would have to admit to being a parent entitled to notice. We address the issue only to support our view that the Order to Vacate is not void for lack of notice to interested parties. Under the APA, aggrieved parties have thirty days in which to appeal agency decisions. 75 O.S.2001 § 318. Nothing in the record indicates any party to the Johnson proceeding timely appealed from the July 30, 2001 Order to Vacate.

■■■ ¶ 17 In addition to finding the Order to Vacate is not void on the face of the judgment roll, we find the Order to Vacate also was proper under the paternity statutes. Title 10 O.S.2001 § 70 establishes the procedures available for determining paternity.[9] That section allows sixty days in which the

---

7. In *Hill,* the biological father claimed to be the victim of the mother's fraud in obtaining a paternity acknowledgment from another man and depriving the biological father of a relationship with the child. In the instant case, Young is not claiming to be the victim of the fraud. Rather, Young hopes to benefit from Bell's apparent fraud against Johnson.

8. It bears noting that it was Johnson, not Young, who was the party damaged by Bell's fraudulent or mistaken allegation of paternity. It is unclear how Young could have been heard to challenge a petition to vacate Johnson's paternity acknowledgment even if Young had received notice of that proceeding.

9. 10 O.S.2001 § 70 provides:

A. Except as otherwise provided by law, a woman who gives birth to a child is the natural mother of the child.

signer of a paternity acknowledgment may rescind his acknowledgment. Beyond those sixty days, an acknowledgment may be rescinded for fraud, duress, or material mistake of fact.[10] The statute contains no time limit for rescinding in those circumstances. And, once a rescission has been entered on those grounds and a judicial or administrative proceeding has determined that the person who signed the rescinded acknowledgment is not the father, DHS is statutorily bound to dismiss the proceedings against that person. The record here shows DHS followed this statutory procedure. And, after vacating the support order and acknowledgment and dismissing the proceeding against Johnson, DHS acted within its authority and duty to determine the paternity of the children by initiating a paternity proceeding against Young, whom Bell had named as the father.[11]

B. Paternity may be established by:

1. A notarized written statement of the father and mother acknowledging paternity pursuant to Section 1–311.3 of Title 63 of the Oklahoma Statutes. A statement acknowledging paternity shall have the same legal effect as an order of paternity entered in a court or administrative proceeding.

 a. The statement may be rescinded by the mother or acknowledging father within the earlier of:

 (1) sixty (60) days after the statement is signed by filing a signed rescission of affidavit acknowledging paternity form with the Office of the State Registrar of Vital Statistics, or

 (2) the date of an administrative or judicial proceeding relating to the child, including but not limited to a proceeding to establish a support order, in which the signatory is a party.

 After the sixty-day period referred to in division (1) of this subparagraph, a signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger. Legal responsibilities, including but not limited to child support obligations, of any signatory arising from the acknowledgment shall not be suspended during the challenge, except for good cause shown.

 This subparagraph shall not be interpreted to authorize the rescission of an acknowledgment of paternity if such rescission would be prohibited under applicable federal law.

 b. (1) If the mother was married at the time of conception or birth, and her husband is not the natural father of the child, the husband may sign a husband's denial of paternity form, which must be filed along with the affidavit acknowledging paternity. (2) The rescission of affidavit acknowledging paternity and the husband's denial of paternity forms shall be prescribed by the Department of Human Services and made available at the same locations as the affidavit acknowledging paternity provided for in Section 1–311.3 of Title 63 of the Oklahoma Statutes;

2. Scientifically reliable genetic tests, including but not limited to blood tests;

3. District or administrative court order; or

4. As otherwise provided by law.

C. 1. If the person signing the acknowledgment of paternity is determined in an administrative or judicial proceeding not to be the father of the child, on the basis of fraud, duress or material mistake of fact pursuant to subsection B of this section, the Department of Human Services, the Office of Administrative Hearings: Child Support, or the court shall dismiss any pending court or administrative collection proceedings against the father and the father will be released from any court-ordered or Department-ordered payments for the support and maintenance of the child.

2. The State Registrar of Vital Statistics shall remove the name of the person listed as the father from the birth certificate upon notice from the Department that such person has been judicially or administratively determined not to be the father. Once paternity is established, the State Registrar of Vital Statistics shall correct its records and amend the birth certificate to reflect the father's name.

D. Proceedings to establish paternity may be brought in the appropriate district court or through the Department. Proceedings may be brought by the mother, father, guardian, or custodian of the child, the Department, the district attorney, a public or private agency or authority chargeable with the support of the child, or by the child. The court, after determining paternity in a civil action, shall enter an order providing for the support and maintenance of the child. The social security numbers of both parents and the child shall be included on the summary of support order form provided for in Section 120 of Title 43 of the Oklahoma Statutes which shall be submitted to the Central Case Registry as provided for in Section 112A of Title 43 of the Oklahoma Statutes. The district court may further make provision for custody and visitation based upon the best interests of the child.

\* \* \*

10. This court has held that the grounds for rescinding an acknowledgment of paternity listed in § 70 control over the available grounds listed in § 1031.1 because § 70 is a specific statute addressing paternity, while § 1031.1 is a general civil procedure statute. *Dept. of Human Services v. Chisum*, 2004 OK CIV APP 20, ¶ 5, 85 P.3d 860.

¶ 18 We agree with and adopt the District Court's analysis, as outlined above, of Young's remaining two claims, regarding the third genetic test and the sufficiency of the evidence. The ALJ acted within its discretion in ordering a third genetic test where the tests obtained by the parties gave conflicting results. And, Young has failed to provide any authority for his claim that a third test is not admissible. Substantial evidence supports the finding that Young is the father of the children here.[12]

¶ 19 Young has failed to show any basis under 75 O.S.2001 § 322 for reversing the administrative paternity order entered against him and that order is AFFIRMED.

HANSEN, J., and JOPLIN, P.J., concur.

11. A paternity proceeding may be brought any time before the child's eighteenth birthday. 10 O.S.2001 § 83.

12. The record does not show that Johnson signed an affidavit acknowledging paternity of Bell's daughter, and the Administrative Order of Support does not appear to have been modified after the birth of Bell's daughter. However, the Labcorp genetic test results show that Young is the father of all three children by a 99.99% probability. Paternity may be established by a scientifically reliable genetic test. 10 O.S.2001 § 70(B)(2).