ROSE v. BERRY PLASTICS CORP.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ROSE v. BERRY PLASTICS CORP.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ROSE v. BERRY PLASTICS CORP.
2019 OK CIV APP 55
Case Number: 116911
Decided: 11/16/2018
Mandate Issued: 10/16/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 55, __ P.3d __

 

DILLON S. ROSE, Petitioner,
v.
BERRY PLASTICS CORP., SAFETY NATIONAL CASUALTY CORP., and THE WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER OF THE WORKERS' COMPENSATION COMMISSION

HONORABLE MICHAEL T. EGAN, ADMINISTRATIVE LAW JUDGE

REVERSED WITH DIRECTIONS

Kathryn Black, Tulsa, Oklahoma, for Petitioner

H. Lee Endicott, Donald A. Bullard, BULLARD & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Respondents

JERRY L. GOODMAN, JUDGE:

¶1 Claimant Dillon S. Rose seeks review of the March 19, 2018, Workers' Compensation Commission (WCC) order denying him benefits because Claimant tested positive for marijuana following an accident. The WCC's order reversed the findings of the Administrative Law Judge (ALJ), which had awarded benefits in an order filed September 13, 2017.[1]

¶2 Based on our review of the facts and applicable law, we reverse the WCC's order and reinstate the ALJ's order.

FACTS

¶3 Claimant's CC Form 3 was filed April 11, 2017, and alleged that Claimant's left hand and wrist were crushed in a "guillotine" machine while working as a machine operator for Employer Berry Plastics on April 5, 2017.[2] Employer initially provided medical treatment, but denied the claim was compensable because Claimant tested positive for marijuana and therefore Employer raised the affirmative defense of intoxication.[3]

¶4 The matter was heard by an ALJ on August 30, 2017. Both parties stipulated as to jurisdiction, availability of coverage, timeliness of claim, and compensation rate.[4] The ALJ found the fact of the injury was not in dispute. Nor was there any dispute Claimant tested positive for marijuana shortly after the accident. The ALJ found that Claimant admitted to smoking marijuana at 11:00 p.m. the night before the accident, but denied its use was a factor in the accident.[5] His admission was later confirmed by the results of a post-accident drug test which showed Claimant "positive THC & Morphine."6, [7] However, the test merely showed the presence of chemicals in the blood. There were no quantitative measurements reported in the test results.

¶5 Claimant's undisputed testimony was that he left home in the dark between 6:00 and 6:15 in the morning and drove 45 minutes to Employer's facility.[8] Following his arrival at work at 6:55 a.m., Claimant attended a safety meeting, met with his supervisor, and began his 7 a.m., shift at his machine.[9] Operating his machine, which ran 24 hours a day, requires concentration and precision when Claimant takes over operation of the machine from the worker on the previous shift.[10] After relieving the previous operator on the machine, Claimant operated it without incident until his relief and break at 9:15 a.m.[11] During his break, Claimant said he ate, smoked a cigarette, and talked to other co-workers and a supervisor.[12] None of his supervisors testified, and there is no evidence that any supervisors had remarked that Claimant was having any problems associated with intoxication, according to Claimant's testimony.[13] Claimant specifically denied being under the influence of any alcohol or drug that day.[14] Before returning to his machine following his break, Claimant went to help a co-worker at a different machine, known as a guillotine machine. The co-worker was having difficulty closing a latch on the machine because a piece of plastic, called a flare out, was stuck in the roller. A video of the incident, introduced into evidence, showed Claimant and two of his co-workers attempting to clear the jammed machine.[15] Finally, Claimant took off his gloves and inserted his hand in the machine to extract the plastic and clear the obstruction. At the same time, a co-worker pushed the button to operate the machine, causing the guillotine to operate and crush Claimant's left arm.[16] The injury took place approximately ten hours after Claimant had smoked marijuana.[17]

¶6 Claimant testified he knew it was against company policy to be impaired on Employee's premises and not wear his safety goggles and gloves.[18] He admitted removing his gloves and safety goggles while working to clear the machine, but denied being impaired when he did so. He acknowledged that putting his hand inside the machine was unsafe, but that he was clear-headed and knew what he was doing.[19] Claimant testified that operating the machine requires two buttons to be pushed simultaneously, insuring that a single operator cannot place his hand inside the machine and operate it at the same time.[20] The ALJ found that, had the co-worker not operated the machine while Claimant's hand was inside, the accident could not have occurred.[21] Under cross-examination, Claimant was asked:

Q Your hand was still in the machine when he pushed the buttons, correct?
A Yes, sir.
Q And you knew that was not . . . good safety, correct?
A Yes, sir.
Q And so why did you do it, were you not thinking clearly?
A No, sir. That I could get the flare outs out of the way and lock the machine into place. I honestly did not think the machine would engage with where the safety bar was.[22] (Emphasis added.)

¶7 At the conclusion of his cross-examination, Claimant was asked:

Q All right. And just to summarize, you are standing in a place where you should not have been standing while he was starting the machine. You had your hand under a machine while the machine was trying to be started. You didn't have your safety glasses on. You didn't have your gloves on. Were you--Again, I'm asking you again, were you thinking clearly that day?
A Yes, sir.[23] (Emphasis added.)

¶8 On redirect, Claimant again stated he was not under the influence of anything, his head was clear, and he knew what he was doing.[24]

¶9 The ALJ then heard testimony from Employer's production manager about the proper safety protocols that were breached by the Claimant. The manager did not witness the accident. The manager opined that Claimant's placement of his hands in the machine was "a bad decision."[25] The witness went on to state that he had not spoken with Claimant before the accident and denied any knowledge that Claimant was intoxicated.[26] The manager stated Claimant had never been written up for any safety violations prior to the accident.

¶10 The ALJ entered an order which concluded:

The Commission believes that while the Claimant and his two co-workers exercised extremely poor judgment in the way they tried to fix the machine, there is no evidence that the Claimant's use of marijuana the night before this accident caused the accident. It is likely that if the Claimant were intoxicated it would have been noted at the safety meeting that morning. The accident was caused because the Claimant had his hand where it should not have been and his co-worker pushed two buttons which should not have pushed [sic] which caused the machine to slam down on the Claimant's hand.[27] (Emphasis added.)

The ALJ ordered Employer to continue to provide medical treatment and temporary benefits.

¶11 Employer sought review[28] before the WCC, which issued an order filed March 19, 2018, reversing the ALJ's order. The WCC's order will be discussed in detail below.

STANDARD OF REVIEW

Any party feeling aggrieved by the judgment, decision, or award made by the administrative law judge may, within ten (10) days of issuance, appeal to the Workers' Compensation Commission. After hearing arguments, the Commission may reverse or modify the decision only if it determines that the decision was against the clear weight of the evidence or contrary to law. . . . Any judgment of the Commission which reverses a decision of the administrative law judge shall contain specific findings relating to the reversal.

C. []The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

85A O.S.Supp. 2014, § 78(C).

This standard of review is substantially the same as that provided for the judicial review of final agency decisions in individual proceedings under the Administrative Procedures Act (APA), 75 O.S.2011 § 322(1). Therefore, we are guided by case law under the APA in understanding our role in appeals from the Commission. On review of an administrative decision, we may only disturb the decision if one of the statutory grounds is shown. Young v. State ex rel. Dep't of Human Servs., 2005 OK CIV APP 58, ¶ 12, 119 P.3d 1279, 1284. We are not entitled to substitute our judgment for that of the agency as to the weight of the evidence on fact questions. Id. On fact issues we will examine the record only to determine if the evidence supportive of the order possesses sufficient substance as to induce a conviction as to the material facts. Union Texas Petroleum v. Corp. Com'n of State of Okl., 1981 OK 86, ¶ 31, 651 P.2d 652, 662.

Estenson Logistics v. Hopson, 2015 OK CIV APP 71, ¶ 8, 357 P.3d 486, 488.

ANALYSIS

¶12 When Claimant's post-accident blood test revealed the presence of marijuana in his system, the presumption set out 85A O.S.Supp.2013, § 2(9)(b)(4) operated. That section states:

"Compensable injury" does not include:
. . .
(4) injury where the accident was caused by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders. If, within twenty-four (24) hours of being injured or reporting an injury, an employee tests positive for intoxication, an illegal controlled substance, or a legal controlled substance used in contravention to a treating physician's orders, or refuses to undergo the drug and alcohol testing, there shall be a rebuttable presumption that the injury was caused by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders. This presumption may only be overcome if the employee proves by clear and convincing evidence that his or her state of intoxication had no causal relationship to the injury. (Emphasis added.).

¶13 In this case, it became incumbent upon Claimant to overcome by clear and convincing evidence the "rebuttable presumption that the injury was caused by the use of . . . illegal drugs." § 2(9)(b)(4). Claimant's evidence consisted of his testimony of the events leading up to the accident. After Claimant was cross-examined and at the conclusion of the evidence, the ALJ found that Claimant and his two co-workers present at the time of the injury (one of whom actually operated the buttons to turn on the machine, crushing Claimant's arm) used:

extremely poor judgment in the way they tried to fix the machine, there is no evidence that the Claimant's use of marijuana the night before this accident caused the accident. It is likely that if the Claimant were intoxicated it would have been noted at the safety meeting that morning. The accident was caused because the Claimant had his hand where it should not have been and his co-worker pushed two buttons which should not have [sic] pushed. . . . (Emphasis added.).[29]

¶14 Upon being presented with the ALJ's conclusion, the WCC's role was to "reverse or modify the decision only if it determines that the decision was against the clear weight of the evidence." § 78(C). Further, the WCC, acting in its appellate capacity, is not:

entitled to substitute [its] judgment for that of the agency as to the weight of the evidence on fact questions. . . . On fact issues [it] will examine the record only to determine if the evidence supportive of the order possesses sufficient substance as to induce a conviction as to the material facts."

Estenson Logistics, id. at ¶ 8, at 488.

¶15 With these parameters in mind, we review the WCC's order. The WCC order correctly sets out its standard of review:

[]The sole question presented is whether there is clear and convincing evidence to support the ALJ's finding that intoxication had no causal relationship to the injury. On review, the Commission may reverse or modify the ALJ's decision only if it is against the clear weight of the evidence or contrary to law.[30] (Footnote omitted.)

See, 85A O.S.Supp. 2014, § 78(C). The WCC's order next goes on to state:

Claimant testified that he was clear-headed at the time of the injury and no longer affected by the marijuana he smoked the night before. This logic requires two great leaps by the Commission. First, we must believe Claimant's self-serving testimony. Second, we must conclude, without any supporting evidence, that Claimant's smoking the night before left him completely free of any intoxicating effect at the time of the accident.

¶16 This statement demonstrates the WCC's first error. It is not the role of the WCC to make "leaps," to "believe claimant's self-serving testimony," or to "conclude" anything. As set out above, the role of the WCC is only to "determine if the evidence supportive of the order possesses sufficient substance as to induce a conviction as to the material facts." Estenson Logistics v. Hopson, 2015 OK CIV APP 71, ¶ 8, 357 P.3d 486, 488, citing Union Texas Petroleum v. Corp. Com'n of State of Okl., 1981 OK 86, ¶ 31, 651 P.2d 652, 662. In this case, Claimant's statement as to his state of mind is uncontested. His unrefuted testimony was that he arose and left for work around 6 a.m., operated a motor vehicle for 45 minutes, participated in a safety meeting with his supervisor, and proceeded to operate his machine for two hours, all without incident. There was no evidence whatsoever that refuted Claimant's statements regarding what happened to cause the accident. It is Claimant's own words that comprise the evidence that must be examined, first by the ALJ, and then by the WCC, to determine if that unrefuted evidence supports the findings of fact by the ALJ. While additional corroborating evidence could buttress Claimant's case in chief, its lack of corroborating evidence, coupled with the lack of any contrary evidence, is sufficient to rebut the presumption imposed by § 2(9)(b)(4).

The determination whether there is 'substantial evidence' to support an order made by [an administrative agency] does not require that the evidence be weighed, but only that the evidence tending to support the order be considered to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved.

Chenoweth v. Pan Am. Petroleum Corp., 1963 OK 108, ¶ 8, 382 P.2d 743, 745, citing Producers Dev. Co. v. Magna Oil Corp., 1962 OK 73, 371 P.2d 702. The WCC's order reversing the ALJ is not based on a determination of whether the evidence supports the ALJ's findings, but rather rests on the WCC's "leaps" of belief regarding that undisputed evidence. This was error.

¶17 Section 78(C) states: "[a]ny judgment of the Commission which reverses a decision of the administrative law judge shall contain specific findings relating to the reversal." In response to that requirement, the WCC's order contains the following statement:

[]According to Claimant's own testimony, he took a fifteen-minute break prior to the accident. His activity and whereabouts during this break are absent from the record. In addition, Claimant's testimony regarding customary workplace practices was uncorroborated and disputed by his supervisor. (Emphasis added).[31]

¶18 This finding is factually erroneous for two reasons. Regarding his activities during his break, Claimant testified:

Q Okay. Now, during your break on this day, did you talk to other coworkers?
A Yes, ma'am.
Q Okay. Did you talk to any supervisors?
A Yes, ma'am. . . .
Q Okay. Now, on your break this day, you think you ate something and maybe had a smoke, and you talked to some other coworkers.
A Yes, ma'am.
Q Supervisors?
A Yes, ma'am.
Q Who was your supervisor on that day?
A Frank Burka.[32]
Q Okay. And you spoke to Frank Burka.
A Yes, ma'am.[33]

Clearly, the WCC's statement that "his activity and whereabouts during this break are absent from the record" is demonstrably erroneous. Further, this statement demonstrates once again the WCC's lapse into that of a finder of fact, rather than confining its review to determine if the evidence supported the ALJ's conclusions. The only reason this Court can surmise for the WCC's injection into the order of a comment about evidence that it says does not appear in the record, when in fact it does exist, is for the purpose of attaching a negative connotation to Claimant's activities during this fifteen minute break. This spurious statement was then used as a basis for denial.

¶19 The WCC's order next states: "In addition, Claimant's testimony regarding customary workplace practices was uncorroborated and disputed by his supervisor." Again this statement is demonstrably inaccurate compared to the record.

¶20 Claimant had testified that, from time-to-time, he and others would remove their safety goggles when they fogged up, or would remove their safety gloves at times in order to complete a task. He testified other supervisors knew of this practice, and testified that sometimes safety violations occurred in order to get the job done.

¶21 Employer's witness stated that if he personally saw someone violating a safety rule he would have a discussion with them, and if they did so again, they would be subject to discipline.[34] However, the supervisor then stated:

The glasses in particular, Dillon made a comment that sometimes they've got to put them on top of their head, that's accurate. Especially, like if they are over at their workstation trying to write down roll weights, things of that nature, because they do get foggy, sweaty . . . whatever the case may be. So I do see that happening, like if I walk by a line and somebody is at their desk, they've got their glasses up like this and they're trying to write down some information, that's pretty commonplace.[35] (Emphasis added).

The supervisor's testimony shows that not only was Claimant's testimony regarding the frequency of safety violations corroborated by Employer's witness, the witness stated such safety violations were "pretty commonplace." Thus, the WCC's finding that Claimant's testimony was both disputed and uncorroborated is belied by this record.

¶22 The WCC's error was compounded when the WCC went on to comment about the quality of Claimant's testimony as uncorroborated. To that point, the order contains a footnote stating, in part, "Claimant introduced into evidence a transcript . . . [which] was neither sworn, nor subject to cross-examination. . . . [W]e afford no weight to the transcript."

¶23 Again, the WCC did not merely weigh the evidence to determine if it supported the ALJ's order, it actively ruled on its weight and admissibility. That is not the WCC's mandate.

¶24 Finally, the WCC's order concludes with this statement:

Even if credible, Claimant's testimony alone does not clearly and convincingly prove his admitted use of marijuana did not contribute to his injury. We are not convinced that Claimant's decision to remove his safety gloves and voluntarily place his hand in harm's way is evidence of any weight to show that he was clear-headed at the time of the accident and that intoxication did not cause the injury. Without some form of corroborating direct evidence, we cannot conclude the chemicals in Claimant's system no longer affected his judgment, physical and cognitive facilities at the time of the accident. Consequently, we find Claimant failed to rebut the presumption that this injury was caused by state of intoxication by clear and convincing evidence.[36]

¶25 We have earlier discussed the errors committed by the WCC regarding its assessment of Claimant's undisputed testimony and the ALJ's reliance on that testimony in reaching its conclusions. We need not repeat that discussion here. We end our analysis by noting that under these facts, we must reject the WCC's underlying inference that the mere presence of marijuana in Claimant's bloodstream inevitably means he was intoxicated. While every intoxicated person will show the presence of an intoxicating substance in their blood, the reverse is not true. The presence of an intoxicating substance in the blood does not automatically mean that person is intoxicated.[37] Though there is a rebuttable presumption of a causal connection between the injury and the use of illegal drugs, the ALJ found Claimant's undisputed testimony of his activities and behaviors following the smoking of the drug overcame that presumption. This is amply supported by the evidence, as it is the only evidence on this point.

CONCLUSION

¶26 The ALJ found that Claimant overcame the presumption by clear and convincing evidence. Reviewing the WCC's order, we find the WCC departed from its duty to determine if the evidence supported the ALJ's order, instead taking it upon itself to comment on, reject, and weigh the evidence. This was error. The WCC's order is reversed and the order of the ALJ is reinstated.

¶27 REVERSED WITH DIRECTIONS.

BARNES, P.J., and RAPP, J., concur.

FOOTNOTES

[1] R. 18-21.

[2] R. 5.

[3] R. 9.

[4] Transcript of Hearing, August 30, 2017, p. 4, ll. 6-20.

[5] R. 19.

[6] R. 30.

[7] Morphine was present in Claimant's system because the post-accident drug test was administered to Claimant in the emergency room while he was on a morphine drip. Employer admitted it is not asserting Claimant was using any other opiate prior to the accident. See, Transcript, February 9, 2018, p. 19, ll. 3-8.

[8] Transcript, August 30 2017, p. 7, ll. 10, 11, 15.

[9] Id. p. 8, ll. 1-4.

[10] Id. ll. 7-23.

[11] Id. p. 9, ll. 9-15.

[12] R. 27, p. 11.

[13] Id. p. 12.

[14] Id.

[15] R. 19.

[16] R. 19.

[17] R. 64.

[18] R. 20.

[19] Id. and Transcript, August 30, 2017, p. 28, l. 24.

[20] Id. p. 26, ll. 18-25, and p. 27, ll. 1-9.

[21] R. 20.

[22] Id. p. 28, ll. 16-28, and p. 29, ll. 1-2.

[23] Id. at p. 30, ll. 13-21.

[24] Id. at p. 33, ll. 22-25, and p. 34, ll. 1-5.

[25] Id. p. 40, l. 6.

[26] Id. p. 41, ll. 7-9.

[27] R. 20.

[28] R. 45.

[29] R. 20.

[30] R. 69.

[31] R. 71.

[32] Frank Burka did not testify.

[33] Transcript of proceedings, August 30, 2017, p. 11, ll. 1-5, 16-25.

[34] Id. p. 43.

[35] Id. p. 44, ll. 6-17.

[36] R. 71.

[37] Such is demonstrated by common experience. Drinking one glass of beer or wine at lunch, followed an hour later by a blood test, will reveal the presence of alcohol in the bloodstream. However, our laws do not impute intoxication occurs until the blood's alcohol content reaches a certain level. Moreover, had Claimant used marijuana under a doctor's order, as permitted by state law, the test would reveal the presence of the drug in his system, and yet the rebuttable presumption would not operate. The critical focus is not whether an intoxicating substance was present in the worker's system, but rather whether there was a causal connection between the accident and a state of intoxication, from whatever source.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2005 OK CIV APP 58, 119 P.3d 1279, YOUNG v. STATE ex rel. DEPT. OF HUMAN SERVICES
Discussed
 2015 OK CIV APP 71, 357 P.3d 486, ESTENSON LOGISTICS v. HOPSON
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1962 OK 73, 371 P.2d 702, PRODUCERS DEVELOPMENT CO. v. MAGNA OIL CORP.
Discussed
 1963 OK 108, 382 P.2d 743, CHENOWETH v. PAN AMERICAN PETROLEUM CORPORATION
Discussed
 1981 OK 86, 651 P.2d 652, Union Texas Petroleum, A Div. of Allied Chemical Corp. v. Corporation Com'n of State of Okl.
Discussed at Length
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Cited
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Cited
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA